**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Disability Rights Ohio, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:18-cv-894 |
| | : | Case No. 2:18-cv-906 |
| v. | : | |
| | : | Judge Edmund A. Sargus |
| The Buckeye Ranch, Inc., | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| Defendant. | : | |

## DISABILITY RIGHTS OHIO'S MOTION TO DISMISS COUNTERCLAIM

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Disability Rights Ohio moves to dismiss

Buckeye Ranch, Inc.'s ("Buckeye Ranch") Counterclaim with prejudice for lack of subject matter

jurisdiction and for failure to state a claim for which relief can be granted.[1]

A memorandum in support is attached and incorporated by reference.

Respectfully submitted,

**NEWHOUSE, PROPHATER, KOLMAN**
**& HOGAN, LLC**

*/s/ D. Wesley Newhouse*
D. Wesley Newhouse          (0022069)
    wnewhouse@npkhlaw.com
Michel Jendretzky          (0082224)
    mjendretzky@npkhlaw.com
5025 Arlington Centre Blvd., Suite 400
Columbus, Ohio 43220
Telephone:     (614) 255-5441
Facsimile:     (614) 255-5446

Co-Counsel for Plaintiff

---

[1] This Court acknowledged that Case Nos. 906 and 894 are connected cases and has effectively consolidated them (Doc. #11, PAGEID #98).

**DISABILITY RIGHTS OHIO**

*/s/ Laura Osseck*

Laura Osseck                    (0082231)
  losseck@disabilityrightsohio.org
Kerstin Sjoberg                 (0076405)
  Ksjoberg@disabilityrightsohio.org
200 Civic Center Drive, Suite 300
Columbus, Ohio 43215
Telephone:      (614) 466-7264
Facsimile:      (614) 644-1888

Co-Counsel for Plaintiff

## MEMORANDUM IN SUPPORT

### I.      BACKGROUND.

Several pleadings and motions have been filed in this matter already, both before and after the two above-captioned cases were effectively consolidated. Buckeye Ranch's most recent Counterclaim filing, to which this Motion to Dismiss applies, was filed in response to Disability Rights Ohio's Second Amended Complaint (Doc. #34, PAGEID #592).

On its Counterclaim, Buckeye Ranch improperly seeks declaratory judgment and an injunction to keep Disability Rights Ohio from carrying out its authority as the designated Protection and Advocacy System ("P&A") to investigate incidents of abuse and neglect of individuals with disabilities in facilities such as Buckeye Ranch. It also seeks damages, and alleges violations of 42 U.S.C. §1983 and the Fourth Amendment of the U.S. Constitution relating to the Protection and Advocacy for Individuals with Mental Illness Act of 1986, 42 U.S.C. §10801 et seq. ("PAIMI"); the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. §15043 et seq. ("PADD"); the Protection and Advocacy of Individual Rights Program, 29

U.S.C. §794e ("PAIR"); 42 U.S.C. §1983 and O.R.C. §5123.601. Disability Rights Ohio seeks dismissal of all claims by this motion.

The P&A Systems' roles are twofold: (1) to investigate incidents of abuse and neglect (42 U.S.C. 10801(c)); and, (2) to monitor facilities and service providers and the care and treatment they provide to individuals with disabilities. (42 U.S.C. §10805(a)(3)). To accomplish this mission, Congress invested P&A Systems with statutory authority to access certain information, including access to records and unaccompanied access to individuals with disabilities and the properties of facilities and services providers. In adopting the original PAIMI Act, Congress intended for the P&A Systems to have the fullest possible access to such information: "The Committee recognizes the need for full access to facilities and clients and to their records in order to ensure the protection of mentally ill persons. It is the intent of the Committee that the [P&A system] have the fullest possible access to client records . . ." S. Rep. 109, 99th Cong., Sess. 10 (1985) (emphasis added), reprinted in 1986 U.S.C.C.A.N. 1361, 1370. Accordingly, the PAIMI Act and its implementing regulations set forth broad access authority for P&A Systems to access individuals with mental illness, records, and facilities like Buckeye Ranch. *See* 42 U.S.C. §10805; 42 C.F.R. §51.41; and 42 C.F.R. §51.42.

This access authority is critical to ensuring that P&A Systems can carry out their missions to protect the rights of institutionalized children as identified by Congress, including the right to be free from abuse or neglect.

Buckeye Ranch operates a residential treatment facility (i.e. class one facility) for children with mental illness. Buckeye Ranch is a facility as defined in 42 U.S.C. §10802(3) and 42 C.F.R.§51.2. As detailed in the case pleadings, DRO received reports of abuse and neglect and set out to investigate them.

After Buckeye Ranch denied Disability Rights Ohio access to certain of the records and interviewees it had requested, Disability Rights Ohio filed an action in the Southern District of Ohio, Case No. 2:18-cv-894, to enforce its authority to access the information pursuant to federal and state laws.[2] The next day Buckeye Ranch filed its own action seeking declaratory judgment and to enjoin Disability Rights Ohio from accessing the information it has requested. The parties have amended their pleadings several time since then. On this Motion to Dismiss, DRO seeks dismissal of the claims brought against it by Buckeye Ranch on its Counterclaim to DRO's Second Amended Complaint.[3]

## II. STANDARD OF REVIEW.

Motions to dismiss under Rule 12(b)(1) generally allege a facial or factual attack on the subject matter jurisdiction alleged in the complaint. *Ohio Nat. Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990). "A *facial* attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Id.* DRO is asserting a facial attack on the subject matter jurisdiction alleged in Buckeye Ranch's Counterclaim.

To survive a Rule 12(b)(6) motion, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal,*

---

[2] DRO has since removed the state law basis for authority, bringing its claims under federal law only.
[3] The facts pertinent to this motion are set forth in considerable detail in the Second Amended Complaint, and are also addressed in the various motions now pending before the Court. DRO, therefore, has dispensed with a detailed discussion herein.

556 U.S. 662, 679 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678 (internal quotation marks and citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III.   LAW AND ARGUMENT.

### A.   Buckeye Ranch has failed to allege a case and controversy that is justiciable or could be remedied by an order of this Court.

Federal Courts operate under Article III of the United States Constitution. Article III requires that a Court may only act when there is a "case or controversy."  In this case, Buckeye Ranch has failed to allege facts that show it has standing to seek injunctive or declaratory relief in its own right, or on behalf of the children to whom it is providing services or, in fact, their parents or legal custodians. Also, Buckeye Ranch does not have standing to seek injunctive relief or to challenge the constitutionality of R.C. 5123.601 because any alleged harm is speculative, and not an injury or threat of injury that is "real and immediate," not "conjectural" or "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

"Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."  *Lyshe v. Levy*, 854 F.3d 855 (6th Cir. 2017) citing *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 Fed. Appx. 409, 410–11 (6th Cir. 2013)

### 1.   Buckeye Ranch does not have standing to assert claims on behalf of its patients or their parents / custodians.

Individual standing is well defined in the case law. The Sixth Circuit summarized the doctrine in a case from last January, *Hagy v. Demers & Adams*, 882 F.3d 616, 620 (6th Cir. 2018):

> Article III of the U.S. Constitution does not authorize federal courts to decide theoretical questions. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04

& n.5 (1998). It extends the "judicial Power" only to concrete "Cases" and "Controversies." U.S. Const. art. III, §2. One telltale of a cognizable dispute suitable for resolution by the federal courts is that the parties have standing to bring it. The "irreducible constitutional minimum" for standing requires the [plaintiff] to show (1) a particular and concrete injury (2) caused by [the defendant] and (3) redressable by the courts. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). A claimant bears the burden of establishing standing and must show it "for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

In this case Buckeye Ranch has not pled facts that demonstrate these elements. The crux of Buckeye Ranch's Counterclaim is that allowing DRO to access its residents or see the requested records would somehow violate the privacy interests of the children. It is important to note that Buckeye Ranch does not allege that it is *in loco parentis* of these individuals (it is not). Nor does it allege any other interest in the children except as a service provider who is being paid to provide mental health services. Buckeye Ranch fails to identify any "particular or concrete injury" caused by DRO, and bears the burden to do so. This cannot create the requisite case and controversy to allow the Court to have jurisdiction.

## 2. Buckeye Ranch has not demonstrated an ability to assert "Third Party Standing."

There are some exceptions to the doctrine of standing, but they are generally construed narrowly. None apply in this matter.

Buckeye Ranch alleges that it must act to protect the interests of the children or their parents/guardians/custodians. This notion of Third Party Standing enjoyed some favor in the 1970s, but has more recently not been given serious consideration by the Court. *E.g. Craig v. Boren*, 429 U.S. 190 (1976). Even in cases like *Craig,* however, the party bringing the action could allege that the application of the law would injure both the claimant and the individual for whom he sought to raise the third-party claim. The Court has never recognized a right to advance a third-party claim where the interest was simply a contractual or vendor-based interest.

6

In this case, the relationship between Buckeye Ranch is clearly one of a contracted service provider. Buckeye Ranch does not allege otherwise, nor could it.

### 3. Buckeye Ranch has not established that it has standing to seek prospective injunctive relief, or to challenge the constitutionality of R.C. 5123.601.

As noted above, the Supreme Court has made it clear that a party does not have standing to seek prospective injunctive relief based on an allegation of harm that is not "real or immediate". In this case, the "harm" is entirely speculative, based on a conclusory allegation that Buckeye Ranch would not be able to preserve the (unspecified) "privacy rights" of the resident minors and their families. Counterclaim ¶55. Buckeye Ranch cites to no law or history to support these allegations; just an undefined fear that it might happen.

This is not only speculation, it is speculation of the most unlikely sort. P&A Systems are mandated by the law to treat confidential information in the same manner as a service provider such as Buckeye Ranch. 42 U.S.C. §10806(a); 45 C.F.R. §1326.28 (PADD confidentiality); 34 C.F.R. §381.31 (PAIR confidentiality). Respondents to actions brought by P&A Systems have expressed confidentiality concerns in other cases, and courts have rejected this argument. *See Sonnenberg v. Disability Rights Idaho, Inc.* (*In re Disability Rights Idaho Request for Ada Cnty. Coroner Records Relating to the Death of D.T.*), 168 F. Supp. 3d 1282, 1294, 2016 U.S. Dist. LEXIS 29595, *26 (internal citations omitted).

The same analysis serves to strike down Buckeye Ranch's constitutional challenge of R.C. §5123.601. DRO does not seek access to residents or production of records under Ohio law (R.C. §5123.60, *et seq.*). DRO only seeks access and records under federal law. As Buckeye Ranch faces no harm under R.C. 5123.601, it lacks standing to challenge the constitutionality of that statute.

**B.** **Buckeye Ranch fails to state a claim for which relief can be granted because it does not have an express or implied right of action under the PAIMI, PADD, or PAIR Acts.**

The appropriate standard to apply in a motion to dismiss for lack of a private right of action is Fed. R. Civ. P. 12(b)(6). *Geiling v. Hemlock Semiconductor Corp.*, 2012 WL 5265551, *4 (E.D. Mich. Oct. 23, 2012) ("'If a statute does not authorize a private right of action, the court should dismiss for failure to state a claim upon which relief can be granted, not for lack of subject matter jurisdiction.'" quoting *M.J. Whitman & Co., Inc. Pension Plan v. American Financial Enterprises, Inc.,* 725 F.2d 394, 396 n. 2 (6th Cir.1984) (internal citations omitted); *White v. MPW Industrial Services, Inc.*, 2006 WL 543829 (E.D. Tenn. March 6, 2006) (applying the 12(b)(6) standard to a motion to dismiss based on a lack of a private right of action)).

The express language of the PAIMI Act reserves the right to pursue legal remedies to the P&A systems. 42 U.S.C. §10805(a)(1)(B). Under 28 U.S.C. §1331, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331. This statute alone, however, cannot serve as the sole basis for jurisdiction. Rather, the plaintiff must sue under a federal statute that creates a right of action in federal court. *Hawaii Disability Rights Center v. Cheung* 513 F.Supp.2d 1185, 1190 (D. Hawaii Oct. 1, 2007); see also *Labaneya v. U.S. Citizenship and Immigration Services*, 965 F.Supp.2d 823, 826 (E.D. Mich. Aug. 29, 2013) ("[T]he federal question statute, 28 U.S.C. §1331, does not provide an independent source for subject matter jurisdiction, as the statute only confers jurisdiction in cases arising under the Constitution and laws of the United States."). The PADD

and PAIR statutes contain similar provisions to that of PAIMI reserving rights of action to the Protection and Advocacy Systems.[4]  Thus, the analysis here is the same.

"The concept of a 'cause of action' is employed specifically to determine who may judicially enforce the statutory rights or obligations." *Davis v. Passman* 442 U.S. 228, 239 (1979). "For a statute to create a private right of action, Congress must have intended to create not only a private right but also a private remedy." *Hawaii Disability Rights Center*, 513 F.Supp.2d. at 1190 citing *Alexander v. Sandoval,* 532 U.S. 275, 286, (2001). This intent may be express or implied. *Id.* citing *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568–78 (1979). A court will only determine whether a statute creates an implied right of action if the statute does not expressly create one. See, *Cort v. Ash,* 422 U.S. 66, 78, (1975), *departed from by Touche Ross & Co.,* 442 U.S. 560, (1979), *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, (1979).

Here, the PAIMI Act specifically creates a private right of action that is limited to the P&A systems for the benefit of individuals with mental illness. 42 U.S.C. 10805 states: "A system established in a State under section 10803 of this title to protect and advocate the rights of individuals with mental illness shall: pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State" 42 U.S.C. 10805(a)(1)(B). See also 42 U.S.C. §10807 (requiring P&A systems to exhaust administrative remedies when appropriate, prior to filing legal action) and 42 C.F.R.

---

[4] See, 42 U.S.C. §15043(A)(2)(a)(i) (A Protection and Advocacy system shall have the authority to: "pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals within the State who are or who may be eligible for treatment, services, or habilitation, or who are being considered for a change in living arrangements, with particular attention to members of ethnic and racial minority groups [.]"); 29 U.S.C. 794e(f)(3) (A Protection and Advocacy System shall "have the authority to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals within the State or the American Indian consortium who are individuals described in subsection (a)(1)").

§51.32 (same). By its clear language, the authority to pursue legal action is conveyed to the P&A systems – not to the facilities that the P&A may be investigating. Buckeye Ranch does not have an express right of action under the PAIMI Act.

Neither does Buckeye Ranch have an implied right of action under the PAIMI Act. To determine whether a statute implies a private right of action, a court must employ four factors:

> "First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,';
> Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?
> Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?
> Fourth, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?"

*Cort v. Ash* 422 U.S. at 78; See also, *American Premier Underwriters, Inc. v. National R.R. Passenger Corp.* 709 F.3d 584, 591 (6th Cir. 2013) (Employing the *Cort* factors to determine whether the Amtrak Reform and Accountability Act created an implied right of action).

In the instant case, Buckeye Ranch cannot meet the test to imply a private right of action. First, Buckeye Ranch is not a member of the class the PAIMI statute was intended to benefit. The PAIMI Act was enacted for the benefit individuals with mental illness – to ensure that the human and civil rights of those individuals are protected. It was decidedly not enacted to benefit the facilities where individuals with mental illness may reside, like Buckeye Ranch.

Second, the legislative history does not reflect an intent to confer a remedy to a plaintiff like Buckeye Ranch. The legislative history of the PAIMI Act makes clear that Congress intended for the P&A systems to have broad access to the information they need to conduct full investigations of abuse and neglect of individuals with disabilities and to pursue legal remedies if such access is not afforded. It does not speak at all to a remedy for a facility that seeks to thwart a

P&A's access to such information. Courts give particular emphasis to the second factor of the *Cort* test. *American Premier Underwriters, Inc.* 709 F.3d at 591.

Third, it would be inconsistent with the underlying purpose of the PAIMI Act to imply a remedy for Buckeye Ranch. The purpose of the PAIMI Act (to protect the rights of individuals with disabilities from abuse and neglect) would be undermined if facilities and service providers were entitled to seek declaratory and injunctive relief to prevent P&A systems from accessing records, individuals with disabilities, and the facilities. If such a remedy were allowed, then P&A system resources would be devoted to defending lawsuits such as this one rather than using their resources to conduct investigations in furtherance of their missions. This cannot be what Congress intended when adopting the PAIMI Act.

Fourth, the remaining *Cort* factor – whether the issue is one of state law such that it would inappropriate to confer a right of action under federal law - is not enough to confer a private right of action here.

Counts I and II of Buckeye Ranch's Counterclaim must be dismissed because Buckeye Ranch has no express or implied right of action under the PAIMI, PADD, and PAIR Acts.

In the absence of an explicit or implicit cause of action, a party cannot seek relief under the Declaratory Judgment Act, 28 U.S.C. §2201. Declaratory judgment is not a cause of action unto itself, it is a remedy that a court can provide to a party who otherwise has a cause of action. *See Davis v. U.S.* 499 F.3d 590, 594 (6th Cir. 2007) ("[The Declaratory Judgment Act] does not create an independent cause of action"); *Michigan Corrections Organization v. Michigan Dept. of Corrections*, 774 F.3d 895 (6th Cir. 2014) ("The point of [The Declaratory Judgment Act] is to create a remedy for a preexisting right enforceable in federal court. It does not provide 'an independent basis for federal subject matter jurisdiction.'" quoting *Toledo v. Jackson,* 485 F.3d

836, 839 (6th Cir.2007)); See also, *Ohio Legal Rights Serv. v. Buckeye Ranch, Inc.*, 365 F. Supp.

2d 877, 882, 2005 U.S. Dist. LEXIS 6554, *12 (S.D. Ohio 2005) (finding that the P&A could bring

a declaratory judgment action regarding its right to certain records under PAIMI because the P&A

had "asserted a right under federal and state law to have access to those records and logs.").

Because Buckeye Ranch does not have a right of action pursuant to the PAIMI Act, it cannot obtain

from this Court a declaration regarding that law.[5]

**C.    Buckeye Ranch fails to state a claim for which relief can be granted under 42 U.S.C. §1983.**

Buckeye Ranch has not and cannot allege facts to state a claim for relief under 42 U.S.C.

§1983. To sufficiently plead a violation of 42 U.S.C. §1983, the plaintiff must allege that the

defendant was a state actor acting under color of state law who, through its conduct, deprived

plaintiff of a right secured by the Constitution or federal laws of the United States. *Flagg Bros.,

Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *see also Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir.

1995); *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984). A prima facie

case under §1983 requires (1) conduct by an individual acting under color of state law; and (2) this

conduct must deprive the plaintiff of rights secured by the Constitution or laws of the United States.

*Day v. Wayne County Bd. Of Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984).

To satisfy the first element, the person "acting under color of state law" must be a "state

actor" or a private actor whose actions are "fairly attributable to the state." *Ellison v. Garbarino*,

48 F.3d 192, 194 (6th Cir. 1995) quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 73 L.

d. 2d 482, 102 S. Ct. 2744 (1982). On this point, Buckeye Ranch has alleged no facts that meet

this test, and it's §1983 action must fail.

---

[5] To the extent Buckeye Ranch is asserting claims under the Protection and Advocacy for Individuals with Developmental Disabilities Act ("PADD"), 42 U.S.C. §15043, the arguments presented in this motion apply equally to those claims.

To the extent Buckeye Ranch seeks §1983 relief against DRO as an "authorized agent of the United States" (Counterclaim, ¶61), such a claim is not permitted. Assuming *arguendo* that DRO is an agent of the federal government, Section 1983 does not provide a remedy for deprivation of rights by federal officials acting under color of federal law. *Settle v. Obama*, 2015 U.S. Dist. LEXIS 155886, *14, 2015 WL 7283105 (E.D. Tenn. 2015) (citing *Fluellen v. U.S. Dep't. of Justice Drug Enforcement Admin.*, 816 F.Supp. 1206, 1210 (E.D. Mich. 1993). The cause of action simply, and expressly applies to *state* actors, not federal actors.

To the extent Buckeye Ranch seeks §1983 relief against DRO as an authorized agent of the State of Ohio (Counterclaim, ¶61), and to any extent this Court might determine that the action is allowed against DRO as a federal agent, the Supreme Court recognizes four tests to determine whether a defendant private entity is a "private actor whose actions are fairly attributable to the state" for purposes of determining liability under §1983: (1) the public function test; (2) the state compulsion test; (3) the nexus test; and (4) the entwinement test. *Vistein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 127(6th Cir. 2009). The Sixth Circuit uses the public function test, the state compulsion test, and the symbiotic relationship or nexus test. *Hardy v. Cmty. Mental Health*, 2018 U.S. App. LEXIS 18781 (6th Cir. 2018).

Under the Public Function Test, a private entity is deemed a state actor where the private entity exercises powers traditionally reserved to the state *Memphis Tenn. Area Local, Am. Postal Workers Union v. City of Memphis,* 361 F.3d 898, 905 (6th Cir. 2004). The very existence of the PAIMI, PADD and PAIR Acts authorizing a private P & A agency to investigate and monitor facilities belies any assertion that these are functions traditionally reserved to the state.

The State Compulsion Test produces a state actor where the "state exercises such coercive

power or provides such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Defibaugh v. Big Brothers/Big Sisters of Ne. Ohio Bd. of Trs.*, 2017 U.S. Dist. LEXIS 170728, *8, *9 (N.D. Ohio Oct. 16, 2017), quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). However, "even where private actors are almost entirely funded by the state, are regulated by state law, and perform a public function, their actions will not be considered state action unless the state has 'exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838. 102 S.Ct. 2764 (1982) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1003, 102 S. Ct. 2777 (1982)).

Under the Nexus Test, "[p]rivate conduct constitutes state action where there is a 'sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself.'" *Defibaugh v. Big Brothers/Big Sisters of Ne. Ohio Bd. of Trs.*, 2017 U.S. Dist. LEXIS 170728, *8, *9 (N.D. Ohio Oct. 16, 2017) (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1336 (6th Cir. 1992); *Reguli v. Guffee*, 371 Fed. Appx. 590, 2010 WL 1252950, *9 (6th Cir. Mar. 2010)). The plaintiff must be able to demonstrate that the state was "intimately involved" in the private party's challenged conduct in order to for that private party's conduct to be attributable to the state. *Id.* Where the state lacks power to exercise coercive power over the defendant's independent judgement, private conduct by the regulated entity does not constitute state action for purposes of the nexus test. *Id.* In *Defibaugh*, the court found that defendant acting as a court appointed guardian ad litem for a minor, and who, in her capacity as a GAL, had the power to investigate, mediate, monitor court proceedings and file motions on behalf of the minor, was not a state actor for purposes of §1983.

In the Sixth Circuit and in the Supreme Court, for purposes of the nexus test, the following are identified factors that, taken alone, are insufficient for a court to find a close nexus between the state and regulated entity: state regulation; public funding; private use of public property; minority presence of public officials on the private entity's board; mere approval or acquiescence of the state in private activity; utilization of public services by the private actors; or the fact that a private actor, by operating, confers an economic benefit on the state. *Taylor v. G.P.E.D.C., Inc.*, 2017 U.S. Dist. LEXIS 106528, at *15

Finally, under the Entwinement Test, the plaintiff must show whether the "nominally private character" of the [private actor] "was overborne by the pervasive entwinement of public institutions and public officials in the [private actor's] composition and workings such that there is no substantial reason to claim unfairness in applying constitutional standards to [the private actor]." *Defibaugh*, citing *Marie v. American Red Cross*, 771 F 3d at 363. "Mere cooperation does not rise to the level of merger required for a finding of state action." *Defibaugh*, citing *Marie v. American Red Cross*, 771 F 3d at 364.

In the Sixth Circuit *Hardy* case, the plaintiff alleged that his constitutional rights were violated when he was terminated from his employment at the nonprofit corporation known as Justice in Mental Health Organization ("JIMHO"). Applying each of these three tests, the appellate court upheld the district court's decision to grant defendants' 12(b)(6) motions to dismiss plaintiff's complaint alleging violations of his civil rights under 42 U.S.C. §1983 based on the following facts:

1) the provision of mental health services that JIMHO rendered was not exclusively reserved to the state;

2) plaintiff's failure to allege that state officials were involved in the decision to terminate plaintiff's employment with JIMHO and bare assertion that JIMHO's actions were "fairly attributable to the state" were insufficient to demonstrate the state had coercive power over the defendant private nonprofit corporation; and

3) Neither the receipt of public funding by a private entity nor the fact that it is subject to state regulation suffices to show a nexus between state and private actors.

*Hardy*, at *8-10.

Here, Buckeye Ranch alleges very few facts even relevant to its apparent §1983 claim. Indeed, the closest reference to a §1983 claim is Buckeye Ranch's allegation that "DRO is an authorized agent of the United State and the State of Ohio for purposes of fulfilling its role as a P&A System and therefor acting on behalf of the state and under color of law." Counterclaim, ¶61

The allegation is merely several cursory legal conclusions strung together and certainly does not provide enough specificity to satisfy any of the tests used by the Sixth Circuit courts. There is no allegation that Disability Rights Ohio is exercising powers traditionally reserved to the state; thus, the pleadings fail the Public Function Test. There is no allegation that the state of Ohio exercises such coercive power or provides such significant encouragement, either overt or covert, that in law Disability Rights Ohio's choice is really that of the state; thus, the State Compulsion Test fails also. Ohio and Disability Rights Ohio are not intimately involved in terms of the conduct alleged in Buckeye Ranch's Counterclaim that Disability Rights Ohio can be a state actor under

the Nexus Test.[6]    And, the state of Ohio and Disability Rights Ohio are not so entwined in terms of their composition and workings that the requirements of the Entwinement Test are satisfied. Buckeye Ranch cannot plead any set of facts to state a claim for relief under §1983 because Disability Rights Ohio is a private entity, not a state actor. *See Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) (the fact that a private entity receives public funding or performs a function which serves the public is not enough to state a claim for relief under §1983).

Quite simply, the pleadings state that Disability Rights Ohio is a non-profit corporation, separate from the State of Ohio. Thus, it is not a state actor against which a §1983 claim can be brought. Because Buckeye Ranch has not and cannot plead any set of facts upon which relief can be granted, its Counterclaim must be dismissed.

### D. Buckeye Ranch fails to state a claim upon which relief can be granted on its challenge of PAIMI, PADD, PAIR, and R.C. §5123.601 on Constitutional grounds.

On its Constitutional challenge, Buckeye Ranch alleges only that "[t]o the extent the PAIMI, PADD, PAIR and O.R.C. §5123.601 give the P&A System, here DRO, the power to determine in its sole discretion whether it has probable cause to interview residents of a residential facility such as The Buckeye Ranch and search its records and that of its residents without consent, such laws are unconstitutional under the Fourth Amendment of the United States Constitution as such laws violate the right to be free of unwarranted searches and seizures." Counterclaim, ¶67.

The P&A Systems' authority to investigate upon its own finding of probable cause under PAIMI has been challenged and upheld on this basis already. No similar challenges have been

---

[6] Indeed, the public record puts to rest the notion that DRO is an agent of the state. DRO is lead counsel on two class actions against the state, *Doe v. State of Ohio*, Case No. 2:91-cv-00464 (Southern District of Ohio) and *Ball v. Kasich*, Case No. 2:16-cv-282 (Southern District of Ohio), and is representing clients in a host of other legal and administrative actions against the state.

made under PADD, PAIR, or R.C. §5123.601. But, similarities between those statutes and PAIMI on the issue of probable cause, search and seizure, dictate similar analyses and conclusions.

This Court, in *Ohio Legal Rights Serv. v. Buckeye Ranch, Inc.*, 365 F. Supp. 2d 877 (S.D. Ohio 2005), found itself on the fringes of this issue, stating that "[i]t is well-settled that a [P&A] is the "final arbiter of probable cause for the purpose of triggering its authority to access all records for an individual that may have been subject to abuse or neglect." *Id.* at 887 (citing *Arizona Center for Disability Law v. Allen,* 197 F.R.D. 689, 693 (D. Ariz. 2000); *Office of Prot. & Advocacy for Persons with Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 321, 2003 U.S. Dist. LEXIS 9500, 191 A.L.R. Fed. 661; *Center For Legal Advocacy v. Earnest,* 188 F.Supp.2d 1251, 1257 (D. Colo. 2002); *Iowa Prot. & Advocacy Servs., Inc. v. Gerard Treatment Programs, L.L.C.,* 152 F.Supp.2d 1150, 1157 (N.D. Iowa 2001)); *see also Arizona Ctr. for Disability Law v. Allen*, 197 F.R.D. 689, 692-693, 2000 U.S. Dist. LEXIS 18657, *9-12; *Office of Prot. & Advocacy for Persons with Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 320-321, 2003 U.S. Dist. LEXIS 9500, *42-45, 191 A.L.R. Fed. 661 (citing *Center For Legal Advocacy v. Earnest*, 188 F. Supp. 2d 1251, 1257 (D. Colo. 2002), rev'd on other grounds, 320 F.3d 1107 (10th Cir. 2003)); *see also Mt. Washington Pediatric Hospital, Inc.*, 106 Md. App. 55, 664 A.2d 16 (citing *Mississippi Prot. & Advocacy System, Inc. v. Cotten*, 929 F.2d 1054 (5th Cir. 1991)); *see also Maryland Disability Law Center v. Mount Washington Pediatric Hospital, Inc.*, at 24 (finding that the initial determination of probable cause to undertake an investigation must be made by the P&A, and that a requirement that the P&A convince the circuit court that probable cause exists prior to having access to patients, personnel, and records is "burdensome and unnecessary.").

One court has dealt with this issue directly, specifically finding that "the standard Fourth Amendment definition of "probable cause" does not apply" to the probable cause analysis under

PAIMI. *Iowa Prot. & Advocacy Servs. v. Tanager Place*, 2004 U.S. Dist. LEXIS 20009, *1-68, 2004 WL 2270002 (reversed on other grounds in *Iowa Prot. & Advocacy Servs. v. Tanager, Inc.,* 427 F.3d 541, 2005 U.S. App. LEXIS 23270, 63 Fed. R. Serv. 3d (Callaghan) 489) (citing 42 C.F.R. §51.2, which defines "probable cause" for purposes of the PAMII Act, and 42 C.F.R. §51.31(g), which describes how probable cause may be established). The court went on to find that "Congress specifically intended P & A systems . . . to be able to enter into a facility and investigate alleged abuse without having to follow the standard Fourth Amendment procedures such as obtaining a search warrant from a neutral magistrate." *Id.* (citing 42 C.F.R. §51.2, which states that the individual determining probable cause may rely upon reasonable inferences, the individual's experience or training regarding similar incidents, or conditions or problems usually associated with abuse or neglect). And further, that "[g]rafting a probable cause standard comparable to the standard utilized under the Fourth Amendment onto searches conducted by P & A systems pursuant to the PAMII Act would substantially frustrate Congress' goal of protecting impaired individuals." *Id.* As such, the court found that the P&A in that case did not need to establish probable cause as that term generally is used in a Fourth Amendment context and did not need to obtain a search warrant from a neutral magistrate prior to investigating the incident at facility.

Even when utilizing the standard Fourth Amendment probable cause analysis, the courts find that the standard of probable cause under the P&A statutes is "lower than that required in the context of a criminal investigation." *Hawaii Disability Rights Center v. Cheung*, 2007 WL 2106584 at *4 (D. Haw. 2007), citing *Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.,* 355 F.Supp.2d 659, 661 (D. Conn. 2005); *see also Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 894 F.Supp. 424, 429 n. 4

(1995); *Ala. Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492, 498–99 (11th Cir. 1996). In those case, the courts consider the following facts and issues:

- Whether the facilities subject to investigation and search under PAIMI have a reasonable expectation of privacy to invoke some sort of 4th Amendment protection (and find that they do not). *Id.*

- That Congress specifically defined probable cause for purposes of the P&A statutes, with authority to do so, and that that standard – as opposed to the criminal standard under the 4th Amendment – applies. *Id.*; *see also Colonnade Catering Corp. v. U.S.*, 397 U.S. 72, 77 (1970); 42 C.F.R. §51.2 (PAIMI Act regulation defining probable cause); 45 C.F.R. §1386.19 (DD regulation defining of probable cause).

- Whether the facilities to be searched or subject to inspection are part of a "closely regulated industry" for which search and seizure are somewhat exempt from the 4th Amendment's warrant requirement. *See New York v. Burger*, 482 U.S. 691, 699-702 (1987); *See Blue v. Koren*, 72 F.3d 1075, 1081 (1995) (regarding nursing homes as closely regulated); *see also* 42 C.F.R. §51.2 (non-exhaustive list of facilities covered by PAIMI); 42 USCA §15043(A) (2) (H).

- The investigatory authority, and purpose of PAIMI, in light of the warrant requirement exemption for businesses the nature of which makes it likely that the evidence will be gone by the time that investigators are able to obtain a warrant, even without active concealment. *See Burger*, 482 U.S. at 710; 42 U.S.C. §10802(3); 42 C.F.R. §51.2; 42 USC §15043(A) (2) (H); 45 C.F.R. §1386.27(b)-(d); 42 USCA §15043(A) (2) (H); 45 C.F.R. §1386.19; 42 C.F.R. §51.42(b); 42 C.F.R. §51.42(b)-(e).

- That business (closely regulated, or not) do not have the same reasonable expectation of privacy as individuals do. *See Donovan v. Dewey*, 452 U.S. 594, 598-599 (1981), citing *United States v. Biswell*, 406 U.S. 311, 316 (1972).

Buckeye Ranch cannot plead any set of facts to support Count III of its Counterclaim. The "probable cause" standard established in PAIMI, and thereby PADD, PAIRI, and R.C. 5123.601, is not the standard Fourth Amendment probable cause standard. In fact, it is a standard that is specifically defined and set forth under the statute. And, to the extent a Fourth Amendment analysis is used to scrutinize the work of P & A Systems, the searches and seizures they conduct are constitutional.

## IV.    CONCLUSION.

For the reasons set forth herein, Buckeye Ranch's Counterclaim should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

Respectfully submitted,

**NEWHOUSE, PROPHATER, KOLMAN & HOGAN, LLC**

*/s/ D. Wesley Newhouse*

D. Wesley Newhouse          (0022069)
   wnewhouse@npkhlaw.com
Michel Jendretzky          (0082224)
   mjendretzky@npkhlaw.com
5025 Arlington Centre Blvd., Suite 400
Columbus, Ohio 43220
Telephone:     (614) 255-5441
Facsimile:     (614) 255-5446

Co-Counsel for Plaintiff

**DISABILITY RIGHTS OHIO**

*/s/ Laura Osseck*

Laura Osseck        (0082231)
  losseck@disabilityrightsohio.org
Kerstin Sjoberg       (0076405)
  Ksjoberg@disabilityrightsohio.org
200 Civic Center Drive, Suite 300
Columbus, Ohio 43215
Telephone:    (614) 466-7264
Facsimile:    (614) 644-1888

Co-Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will also send such notification to:

Maribeth Meluch
Isaac, Wiles, Burkholder & Teetor, LLC
Two Miranova Place, Suite 700
Columbus, OH 43215

*/s/ D. Wesley Newhouse*

D. Wesley Newhouse    (0022069)
Michel Jendretzky      (0082224)